IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>) |
| vs. | )  The Honorable<br>)  Charles P. Kocoras<br>) |
| NIKESH A. PATEL | )<br>)<br>)  No. 1:14-cr-546 |

FILED
DEC 6, 2016

Judge Charles P. Kocoras
United States District Court

## PLEA DECLARATION

The defendant, NIKESH A. PATEL, after consultation with his attorney, MARK L. HORWITZ, acknowledges and states the following:

1. He has been charged by indictment with wire fraud in violation of 18 U.S.C. § 1343 (counts one through five).

2. Mr. Patel has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

3. Mr. Patel fully understands the nature and elements of the crimes with which he has been charged.

4. Mr. Patel will enter a voluntary plea of guilty to the indictment.

Factual Basis

5. Mr. Patel will plead guilty because he is in fact guilty of the charges in the indictment.

In pleading guilty, Mr. Patel acknowledges the following facts which establish his guilt:

Beginning not later than March 2012, and continuing through approximately September 2014, in the Northern District of Illinois and elsewhere, Mr. Patel and Timothy G. Fisher

1



(charged by information before this Court with one count of money laundering in case number 16-cr-717) knowingly devised and intended to devise a scheme to defraud and to obtain money from Business A by means of materially false and fraudulent pretenses, representations, promises and concealment of material facts, and knowingly executed the scheme by causing interstate communications and transfers of funds.

Beginning in approximately September 2011, and continuing through approximately September 2014, Mr. Patel was the Chief Executive Officer of First Farmers Financial LLC. ("First Farmers"), a business principally located in Orlando, Florida, which, among other things, purportedly acted as a non-traditional lender engaged in government-guaranteed lending under programs authorized by the U.S. Department of Agriculture ("USDA"). During that same time, Mr. Fisher was the President and Chief Operating Officer of First Farmers. To obtain USDA certification to act as a non-traditional lender of USDA guaranteed loans, Messrs. Patel and Fisher created and submitted documents to the USDA that falsely reported the financial stability of First Farmers, their experience, and the identities of employees. This conduct included documentation that Mr. Fisher created in March 2012 that falsely represented that First Farmers had assets in excess of $20 million on deposit at Wells Fargo Bank.[1]

Beginning in approximately November 2012, Mr. Patel, on behalf of First Farmers, submitted three loans, which falsely purported to be guaranteed by the USDA, to an investment advisor in Memphis, Tennessee. The three loans were held in the advisor's inventory at Mr. Patel's request. In approximately May 2013, the advisor required Mr. Patel to buy back these loans. Mr. Patel had started dealing with Business A in Milwaukee, Wisconsin, and obtained

---

[1] Mr. Fisher was also employed at Wells Fargo Bank and used the experience from that position to make the documents he fabricated look authentic and genuine.



loans through false representations. Some of the proceeds of loans from Business A were used to pay off the Tennessee investment advisor.

False Financials

To induce Business A to acquire loans with First Farmers, in March 2013, Mr. Patel falsely represented to Business A that First Farmers had $52 million in assets, $17 million in cash on hand, and total profits of $1.8 million, when in fact, the company had no assets other than money it obtained as previously described. Mr. Fisher fabricated documents to reflect these assets. Messrs. Patel and Fisher also caused the creation of false financial statements and balance sheets for calendar years 2011, 2012, and the first two months of 2013, which were provided to Business A.

To induce Business A to expand and increase the amount of USDA guaranteed loans they acquired from First Farmers, Messrs. Patel and Fisher assisted in creating "audited financial statements" for First Farmers for calendar year 2013, which falsely represented that First Farmers had substantial assets, cash on hand, and profits. Mr. Patel falsely represented to Business A that an independent CPA, performed the audit and created the "audited financial statements." Messrs. Patel and Fisher knew that the CPA was a fictitious individual, created a fictitious biography and e-mail address, and sent that information to Business A.

Fraudulent Loans

Between approximately May 2013 and September 2014, Mr. Patel submitted what purported to be twenty-six USDA guaranteed loan packages to Business A that had been issued by First Farmers to borrowers in Florida and Georgia with principal amounts ranging from $2,500,000 to $10,000,000. Business A directed its Lisle-based affiliate to wire transfer approximately $175 million from the affiliate's bank account in Illinois to First Farmer's account



at BMO Harris Bank in Florida, and deposited the remaining $4 million into a margin account in First Farmers name at the affiliate. Mr. Patel used some funds First Farmers received from Business A to make principal and interest payments to Business A, and to repurchase the loans from the Tennessee investment advisor.

As to count one, on December 9, 2013, Mr. Patel, for the purpose of executing the scheme to defraud Business A, knowingly transmitted by means of wire communications in interstate commerce certain signs signals, namely, an e-mail containing false financial statements and balance sheets for First Farmers from Orlando, Florida, to Business A in Milwaukee, Wisconsin, to a computer located in Lisle, Illinois.

As to count two, on July 19, 2013, Mr. Patel, for the purpose of executing the scheme to defraud Business A in count one, knowingly caused a transmission by means of wire communications in interstate commerce certain signs signals, namely, a wire transfer of funds from Business A's Lisle-based affiliate to First Farmers' account in Florida.

As to count three, on July 26, 2013, Mr. Patel, for the purpose of executing the scheme to defraud Business A in count one, knowingly caused a transmission by means of wire communications in interstate commerce certain signs signals, namely, a wire transfer of funds from Business A's Lisle-based affiliate to First Farmers' account in Florida.

As to count four, on July 19, 2013, Mr. Patel, for the purpose of executing the scheme to defraud Business A in count one, knowingly caused a transmission by means of wire communications in interstate commerce certain signs signals, namely, a wire transfer of funds from Business A's Lisle-based affiliate to First Farmers' account in Florida.

As to count five, on September 25, 2014, Mr. Patel, for the purpose of executing the scheme to defraud Business A in count one, knowingly caused a transmission by means of wire



communications in interstate commerce certain signs signals, namely, an e-mail from Orlando, Florida, to Business A in Milwaukee, Wisconsin, to a computer located in Lisle, Illinois.

Potential Penalties

6.  Mr. Patel acknowledges that each count carries a maximum sentence of 20 years' imprisonment; a fine of up to $250,000, or twice the gross gain or gross loss resulting from the offenses, whichever is greater; and a term of supervised release of not more than three years.

Mr. Patel further acknowledges that, although they are now merely advisory, this Court will consider the United States Sentencing Guidelines in determining a reasonable sentence in his case. With respect to those advisory guidelines, Mr. Patel's attorney has explained to him that the Probation Department for the Northern District of Illinois will conduct an investigation into his case and will submit a report to this Court which details its Guideline calculations. Mr. Patel understands that his attorney, as well as the attorney for the government, will have an opportunity to review the Guideline calculations of the Probation Department and submit any objections before the sentencing hearing.

Mr. Patel and his attorney submit the following preliminary calculation of the guidelines in this case:

The counts of conviction are grouped under U.S.S.G. §§ 3D1.2(d), 3D1.3(b), so the offense level is the aggregate offense level corresponding to the conduct of the charged offenses.

The base offense level is 7 because the instant offense requires use of U.S.S.G. § 2B1.1 and the statutory maximum sentence is 20 years: U.S.S.G. § 2B1.1(a)(1).

The base offense level is increased by 26 levels because the offense involved more than $150,000,000 but less than $250,000,000 in loss: U.S.S.G. § 2B1.1(b)(1)(N).



The base offense is increased an additional 2 levels because the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means: U.S.S.G. § 2B1.1(b)(10)(C).[2]

The plea agreement entered into by Mr. Fisher and the government agreed that the base offense is increased by 4 levels, pursuant to § 2B1.1(b)(2)(B), because the offense resulted in substantial financial hardship to five or more victims. Counsel for Mr. Patel, at the time of entering into this plea, has insufficient information to agree or disagree that this enhancement applies.

Further, the plea agreement entered into by Mr. Fisher and the government agreed that the base offense is increased by 4 levels, pursuant to § 2B1.1(b)(16)(B)(i), because the offense substantially jeopardized the safety and soundness of a financial institution. Counsel for Mr. Patel, at the time of entering into this plea, has insufficient information to agree or disagree that this enhancement applies.

Mr. Patel has clearly demonstrated recognition and affirmative acceptance of responsibility; therefore, his overall offense level is decreased by two levels: U.S.S.G. §3E1.1(a).

If the Court finds that Mr. Patel has fully accepted responsibility for his offense pursuant to U.S.S.G. §3E1.1(a), the government has indicated that it will move for an additional one level reduction because Mr. Patel timely notified the government of his intention to enter a guilty plea: U.S.S.G. §3E1.1(b).

---

[2] While defense counsel believes this enhancement applies, it was conspicuously omitted from Mr. Fisher's plea agreement. To the extent the government believes the enhancement does not apply to Mr. Fisher or Mr. Patel, defense counsel will not argue for its application.



While the defense believes the Guidelines over represent the seriousness of Mr. Patel's criminal history, Mr. Patel's criminal history is within Criminal History Category III, based on the following convictions:

i. On or about September 12, 2011, Mr. Patel entered a plea of no contest to the misdemeanor charge of Driving Under the Influence in Orange County, Florida, case number 48-2010-CT-3006-AOX, and was sentenced to 360 days of probation with credit for two days for time served. On September 12, 2012, Mr. Patel's probation was revoked when he committed the misdemeanor in the following paragraph, and he was sentenced to serve a term of home confinement. This conviction results in one criminal history point pursuant to § 4A1.1(c).

ii. On September 18, 2012, Mr. Patel entered a plea of no contest to the misdemeanor charge of Assault on a Law Enforcement Officer in Orange County, Florida, case number 2012-MM-6201-A-O and was sentenced to serve 120 days of home confinement with credit for the day he was arrested and booked, followed by 240 days probation. This conviction results in one criminal history point pursuant to § 4A1.1(c).

iii. Mr. Patel's criminal history points are increased by two points because he committed the instant offense while under a criminal justice sentence pursuant to § 4A1.1(e), namely, a sentence including probation.

The defense reserves the right to undertake a complete investigation of Mr. Patel's criminal history prior to sentencing, and argue that the Guidelines substantially over-represent the seriousness of Mr. Patel's criminal history and the likelihood that he will commit other crimes, pursuant to § 4A1.3(b).

Defense counsel believes, and has advised Mr. Patel, that the application of all of the above-noted enhancements result in a sentencing range of 360 months to life.[3]

Trial Rights and Appellate Rights

7. Mr. Patel understands that by pleading guilty he surrenders certain rights, including the rights described in the following subparagraphs:

(a) Mr. Patel has the right to maintain his plea of not guilty and to put the government to its burden to prove his guilt beyond a reasonable doubt. If he chose to maintain his plea of not guilty, Mr. Patel would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

(b) In a jury trial, Mr. Patel has the right to a jury composed of twelve citizens selected at random. Mr. Patel and his attorneys would participate in choosing the jurors, in that they could seek to remove prospective jurors for cause where actual bias or other disqualification is shown, and can remove prospective jurors by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that Mr. Patel is presumed innocent, and that it could not convict him unless - after hearing all the evidence and being properly instructed on the law - it was persuaded of Mr. Patel's guilt beyond a reasonable doubt.

---

[3] This calculation is corroborated by Mr. Fisher's plea agreement, which resulted in a range of 262 to 327 months before application of the statutory maximum of 120 months.



If the trial is held by the judge without a jury, the judge would find the facts and determine whether or not he was persuaded of Mr. Patel's guilt beyond a reasonable doubt, after hearing all of the evidence.

(c) In either a trial by a jury or by a judge, Mr. Patel has the right to confront the witnesses against him. Thus, the government would be required to present its witnesses and other evidence against Mr. Patel. Mr. Patel would be able to see and hear each and every government witness, and his attorney would be able to cross-examine them. In turn, Mr. Patel could present witnesses and other evidence in his own behalf. However, he would be under no obligation to do so because he is presumed to be innocent; therefore, he need not prove his innocence. If the witnesses for Mr. Patel would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(d) At a trial, Mr. Patel would have a privilege against self-incrimination by which he could decline to testify and the jury would be instructed that it could draw no inference of guilt from his decision not to testify. If Mr. Patel desired to do so, he could testify on his own behalf.

8. Mr. Patel understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. By pleading guilty Mr. Patel admits that he is guilty and agrees that he should be found guilty. Mr. Patel's attorney has explained those rights to him, and the consequences of his waiver of those rights. Mr. Patel further understands that he is waiving all appellate issues that might have been available if he had exercised his right to trial, and only may appeal the validity of this plea of guilty or the sentence.



Limitations and Consequences of this Plea Declaration

10. Mr. Patel understands that the United States Attorney's Office will fully apprize the District Court and the United States Probation Office of the nature, scope and extent of his conduct regarding the charges against him, and related matters, including all matters in aggravation and mitigation relevant to the issue of sentencing. Mr. Patel further understands that, through his attorney and his own statements, he will be able to present evidence in mitigation at the time of sentencing.

11. Mr. Patel understands that at the time of sentencing, his attorney will be free to make any sentencing recommendations that he deems appropriate.

12. Notwithstanding the above, if this Court refuses to accept Mr. Patel's plea of guilty, this Plea Declaration shall become null and void and he will not be bound to any admissions or concessions made herein. Further, it is Mr. Patel's position that, should the Court decline to accept Mr. Patel's plea, this Plea Declaration and the ensuing court proceedings are inadmissible in later court proceedings pursuant to Federal Rule of Criminal Procedure 410(a).

13. Mr. Patel agrees that this Plea Declaration shall be filed and become part of the record of the case.



14. Finally, Mr. Patel acknowledges that he has read this Plea Declaration and carefully reviewed each provision. Mr. Patel and his attorney acknowledges that no threats, promises, or representations have been made, nor agreements reached, to induce him to plead guilty.

Signed this __2__ day of December, 2016,

_____
Nikesh A. Patel, Defendant

_____
Mark L. Horwitz, Attorney for Defendant

MARK L. HORWITZ
LAW OFFICES OF MARK L. HORWITZ, P.A.
17 East Pine Street
Orlando, Florida 32801
(407) 843-7733